[Cite as *State v. MacConnell*, 2017-Ohio-7638.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                               :
                                        :
    Plaintiff-Appellee              :    C.A. CASE NOS. 27292 and 27293
                                        :
v.                                          :    T.C. NOS. 15-CR-3268 and 16-CR-74
                                        :
RION T. MacCONNELL                          :    (Criminal Appeal from
                                        :     Common Pleas Court)
    Defendant-Appellant             :
                                        :

. . . . . . . . . . .

# O P I N I O N

Rendered on the ____15th___ day of _____September_____, 2017.

. . . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHN K. LIMOLI, Atty. Reg. No. 0058551, 1402 Sunset Drive, Fairborn, Ohio 45324
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the consolidated Notices of Appeal of Rion MacConnell. MacConnell appeals from his September 29, 2016 judgment entries of

conviction, following the denial of his pre-sentence motion to withdraw his guilty pleas, in Case No. 2015 CR 3268, to one count of theft ($1,000.00) (without consent), in violation of R.C. 2913.02(A)(1), and in Case No. 2016 CR 0074, to one count of telecommunications fraud, in violation of R.C. 2913.05(A), both felonies of the fifth degree. The trial court sentenced McConnell to six months for theft and to 12 months for telecommunications fraud, and it ordered the sentences to be served consecutively.

{¶ 2} In Case No. 2015 CR 3268, McConnell was indicted on February 26, 2016, on the one count of theft, he entered a plea of not guilty on March 4, 2016, and on March 8, 2016, Public Defender Melissa Pfahler entered an appearance of counsel. On March 11, 2016, Pfahler filed a "Motion to Withdraw," noting that she "represented co-defendant and potential material witness, Corey Davidson, in Dayton Municipal Court case #15CRB7070." MacConnell filed a pro se "Motion to Dismiss Charges Two Prong" on March 15, 2016, arguing that he is without a lawyer, that Corey Davidson committed the theft offense at issue, and that the value of the item stolen is less than $1,000.00. On March 16, 2016, the court granted the "Motion to Withdraw" and appointed Attorney Dawn Garrett to represent MacConnell. On May 19, 2016, the State opposed MacConnell's motion to dismiss, and on June 9, 2016, the court overruled the motion, finding that MacConnell was properly represented and indicted. On June 13, 2016, Garrett filed "Defense Counsel's Motion to Withdraw and for New Counsel to be Appointed for Defendant with Memorandum Argument Included Herein," arguing that the "attorney-client relationship has broken down to such an extent that it is no longer possible to provide effective representation and said counsel, with consent of the client, has therefore filed the within motion to withdraw * * *." On June 23, 2016, the court granted the motion

and on the same day the court appointed Attorney John Leahy to represent MacConnell. On July 20, 2016, "Defendant's Motion for Valuation Expert" was filed. On August 12, 2016, MacConnell filed a pro se "Motion of Defendant to Have Counsel Replaced Argument Included Herein," arguing that "the parties can no longer communicate effectively or even work on this matter." The motion requested the court "to appoint new counsel in this matter."

{¶ 3} In Case No. 2016 CR 0074, MacConnell was indicted on March 24, 2016 on two counts of telecommunications fraud, he pled not guilty on March 30, 2016, and on June 13, 2016, Garrett filed "Defense Counsel's Motion to Withdraw and for New Counsel to be Appointed for Defendant with Memorandum Argument Included Herein," again arguing that the attorney-client relationship "has broken down." On June 23, 2016, the court granted the motion and appointed Leahy to represent MacConnell. On August 18, MacConnell filed a pro se "Motion of Defendant to Have Counsel Replaced Argument Included Herein. MacConnell again argued that his communications with Leahy had "broken down," and he requested the court "to appoint new counsel in this matter."

{¶ 4} In each case, also on August 18, 2016, MacConnell filed a pro se "Motion to Re-consider of Defendant to have Counsel Replaced with Affidavits Here-In". The identical motions provide as follows:

> The defendant has asked his lawyer, J. Jack Leahy to help protect his interest and rights and to get * * * an expert that court has said it will be liberal in agreeing for pay [sic] but no such action has been made and we are less than a week till the jury [sic]. I also asked for other motions to filed [sic] * * * and no such motions have been file[d]. * * *

The court said on the record the defendant [h]as had three lawyers replaced. That was an error of the court. Upon trying to offer information to the court the defendant was shut down. The defendant [h]as NEVER asked for another lawyer to be replaced in this case till the current matter at hand. The first lawyer did that motion due to a conflict. * * *

Now the court [h]as denied my motion in the matter for the instant motion. After defendant myself, made the request, the arguments of law, the court denied my request again I said, "Objection" and was told it didn't matter if I wanted my own lawyer he would have [to] be ready on Monday. I have tried to talk to John K. Limoli ESQ about this matter but he said as I was covered by another lawyer he could not talk about that case. * * *

* * *

I have also just learned that J. Jack Leahy graduated from the U.D. law school in the past two years become an alumni of the school (U.D.) where the alleged theft happened. I feel this might cause the lawyer to have bias feelings toward the defendant. He might have been a victim himself.

{¶ 5} On August 19, 2016, in Case No. 2015 CR 3268, the court issued a "Decision, Order, and Entry Overruling Defendant's Motion." The court determined in part as follows:

Upon review, the Court first notes that at the beginning of his case in February of 2016, public defender Melissa Pfahler was appointed to represent Defendant. On March 11, 2016, Ms. Phahler requested to

withdraw as Defendant's Counsel because of a conflict. The court granted Ms. Pfahler's request on March 16, 2016, and attorney Dawn Garrett was appointed on March 17, 2016. On June 13, 2016, Ms. Garrett requested to withdraw as Defendant's attorney due to the irretrievable breakdown of the attorney client relationship. On June 23, 2016, the Court granted Ms. Garrett's request and, on the same day, Mr. Leahy was appointed to represent Defendant in this matter. The Court finds that, although Defendant asserts that Ms. Garrett voluntarily requested to withdraw, Defendant's actions precipitated the breakdown of that relationship and contributed to Ms. Garrett's request. Further, Mr. Leahy indicated to the Court on August 17, 2016 that he is prepared for the trial on August 22, 2016, and is able to properly represent Defendant, and did not state that there has been an irretrievable breakdown of the attorney client relationship. In addition, the Court notes that Mr. Leahy is a competent attorney and the fact that he is a former University of Dayton student is completely irrelevant to this matter. It is apparent to the Court that Defendant's purpose for filing this *Motion* is to delay the trial, and there is no basis for any concerns relating to Mr. Leahy's competency or ability to provide Defendant with effective legal representation. Finally, the court notes that it informed Defendant on August 17, 2016 that he is free to hire any attorney he wishes, and is not required to be represented by Mr. Leahy; however, the Court also made it clear that any new counsel retained by Defendant must be ready to proceed with the trial on August 22, 2016, in accordance with the Court's

schedule for this matter.

**{¶ 6}** Also on August 19, 2016, in Case No. 2015 CR 3268, a "Motion for Disclosure of Brady Material" was filed.

**{¶ 7}** On August 22, 2016, MacConnell's plea hearing occurred. Therein, the following exchange occurred:

MS. EGAN: * * * We're here in 2015-CR-3268.

THE COURT: * * * and that's the theft offense, correct?

MS. EGAN:   It is, Your Honor.   It's one sole count in the indictment.

THE COURT:   And what's the case number in the other case?

MS. EGAN:   That one is 2016-CR-74.

* * *

MS. EGAN:   That one is two counts of telecommunications fraud. And those are F-5 offenses.

THE COURT:   And Defendant is going to be pleading to one or both of those?

MS. EGAN:   Count I in the indictment.   With that, we would dismiss Count II.

THE COURT:   * * * Mr. Leahy, is that understanding of the plea agreement? [sic]

MR. LEAHY:   It is, Your Honor.

THE COURT:   * * * The record should reflect that this matter was set for a jury trial this morning.   In fact, we have, the jurors have been checked in and the jury trial is ready to go in my court room.   We are in

another judge's courtroom for this purpose of this plea.

Mr. MacConnell, let me ask you. Is this your understanding of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Is this what you want to do this morning?

THE DEFENDANT: I want to enter this with the - - yeah, with the dates that we have in mind for the PSI and everything else. Yes.

THE COURT: * * * So what I told your attorney, we're going to have you back on September 28th.

THE DEFENDANT: Yes.

THE COURT: * * * I know your attorney has gone over the plea agreement with you or the plea forms. I need to go through with you, sir, and take your plea and ask you here, orally.

First of all, we're going to do it in both of these cases combined. So my questions go to both.

{¶ 8} The court then ascertained from MacConnell that he is a United States citizen, that he is 39 years old and has attended college, that he can read and write, and that he does not have a physical or mental condition that could impair his understanding of the proceedings. The court ascertained that MacConnell was not on community control sanctions or post-release control. The following exchange occurred:

THE COURT: Now, sir, you're charged in this case with one count of theft, a felony of the fifth degree, and one count of telephone (sic) communication fraud, a felony of the fifth degree.

Do you understand that as a result of your plea, the Court could sentence you to financial sanctions including a fine of up to $2,500; I can impose court costs, restitution if there is any, and other financial sanctions; do you understand that?

THE DEFENDANT: Yes, I did.

THE COURT: Do you also understand, sir, the Court could sentence you to a prison term of 6 to 12 months or any month in-between that on each of these two offenses; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if I ran them consecutively that could be a total of 24 months; do you understand that?

THE DEFENDANT: Yes.

{¶ 9} The court advised MacConnell that upon completing any prison sentence, he may be required to serve a period of three years of post-release control, and of the consequences of violating post-release control and being convicted of a felony while on post-release control. The court advised MacConnell that he is eligible for community control sanctions, and the consequences of violating community control. The following exchange occurred:

THE COURT: Sir, you heard the plea agreement that was read into the record before we began. Is there anything else that you believe should be part of the plea agreement other than what was said?

THE DEFENDANT: No.

THE COURT: Sir, has anyone, including your attorney, promised

you anything else or that you will receive community control sanction or will not receive a prison sentence by pleading guilty - -

THE DEFENDANT:   No.

THE COURT:   - - to this offense?

THE DEFENDANT:   No.

THE COURT:   You understand, sir, that a guilty plea, it is a complete admission of your guilt and you're giving up your right to appeal any pre-trial rulings in this case; do you understand that?

THE DEFENDANT:   Yes.

THE COURT:   You also understand, sir, upon accepting your plea of guilty the court is going to enter a judgment of guilty against you and we're going to set your case down for sentencing at a later date; do you understand that?

THE DEFENDANT:   Yes.

{¶ 10} The court then thoroughly advised MacConnell of the constitutional rights he was giving up by pleading guilty, namely his right to a jury trial, to require the State to prove his guilt beyond a reasonable doubt to all members of a jury, to confront witnesses, to have compulsory process for obtaining witnesses in his favor, and to not be forced to testify.   MacConnell indicated his understanding of the rights waived by his guilty pleas. Before providing a statement of the charges, the prosecutor indicated to the court that in "the 2016 matter where we are dismissing Count II, it is in the plea form but the State is requesting restitution on all indicted counts," and MacConnell indicated his understanding of the prosecutor's representation.   MacConnell then asked the court for a "ballpark"

amount of the restitution, and the court indicated that "[t]hat's part of the PSI investigation is to determine restitution." The following exchange occurred:

MS. EGAN: * * * Your Honor, in the 2015 case, the State charges by way of indictment that on or about September 24th, 2015 in the County of Montgomery, State of Ohio, Rion T. MacConnell, with purpose to deprive the owner, to wit, Reda Aldahan of property or services, did knowingly and without the consent of the owner or person authorized to give consent, obtain or exert control over said owner's property or services, to wit, miscellaneous items, having a value of $1,000 or more but less than $7,500 in violation of Section 2913.02(A)(1) of the Ohio Revised Code, a felony of the fifth degree.

In 2016CR74, the State charges in Count I of the indictment that on or about January 4th, 2016, in the State of Ohio, County of Montgomery, Rion T. MacConnell did knowingly disseminate, transmit or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device or telecommunications service any writing, data, sign, signal, picture, sound or image with purpose to execute or otherwise further the scheme to defraud in violation of Section 2913.05(A) of the Ohio Revised Code, a felony of the fifth degree.

THE COURT: Mr. MacConnell, did you understand what the Prosecution just said?

THE DEFENDANT: Yes.

THE COURT: Are those facts true?

THE DEFENDANT: Yes.

THE COURT: Have you had the opportunity to talk with your counsel about all the elements of the offense including any possible defenses and motions that you could file?

THE DEFENDANT: Yes.

THE COURT: Are you entering your plea voluntarily?

THE DEFENDANT: Yes, I am.

THE COURT: No one's forcing you to do this, right?

THE DEFENDANT: No.

THE COURT: And you're satisfied with the representation of your attorney in this case.

THE DEFENDANT: Yes.

THE COURT: Now, sir, you have the Court's plea form in front of you there for those two separate cases. You've heard me go through all the rights. If you understand your rights, the potential penalties and nature of the charges, you still want to plead guilty, sign those forms for me, please.

(Pause)

THE COURT: Mr. MacConnell, before we go any further, is there anything, at all, that you do not understand up to this point in time?

THE DEFENDANT: I would like to be able to pay restitution before then and I would like to have a ballpark number before the sentencing.

THE COURT: Sir, I don't have it. I don't know if it was in the police report. Mr. Leahy may have it in the police report. I don't know. When

you're interviewed for your PSI, they should be able to provide that number to you. I just don't have it right now.

THE DEFENDANT: Okay.

THE COURT: Does that make any difference with what we're doing here today?

THE DEFENDANT: No. I just wanted to be able to see it and make things right.

THE COURT: All right. Well, I appreciate that.

Do you have any other further questions for your attorney or the Court before we go any further?

THE DEFENDANT: No.

THE COURT: Mr. MacConnell, in Case Number 15-CR-3268 to the charge of theft, a felony of the fifth degree, how do you plead?

THE DEFENDANT: Guilty.

THE COURT: And in Case Number 16-CR-74 to Count I of the indictment, telecommunications fraud, a felony of the fifth degree, how would you plead?

THE DEFENDANT: To the one count guilty.

THE COURT: It's Count I, telecommunications fraud.

THE DEFENDANT: Yes.

THE COURT: How do you plead?

THE DEFENDANT: Yes. Guilty.

**{¶ 11}** MacConnell's plea forms indicate that he voluntarily gave up his

Constitutional rights, withdrew his pleas of not guilty, and entered pleas of guilty in Case No. 2015 CR 3268 and Case No. 2016 CR 0074.

{¶ 12} On September 7, 2016, a "Substitution of Counsel Appearance of Counsel" was filed in each case which provides that Attorney John Limoli is substituting for Leahy. On September 22, 2016, Motions to Withdraw Guilty Pleas were filed in both cases. In Case No. 2015 CR 3268, the motion provides that the property taken "was a used laptop computer and a used text book. Defendant, who had a variety of attorneys, asked each attorney to research the value of the property because he did not believe the property value sufficed to merit a felony of the fifth degree." According to the motion, "the charge should have been a misdemeanor." MacConnell asserted that he "was not present at voir dire," and that he "has a right to be present at all stages of the criminal proceedings." He stated that his "attorney simply told the defendant that the jury had been selected and that the defendant would be well advised to enter a plea prior to proceeding further. Defendant had no way of knowing the make up [sic] of the jury or whether any of the jurors should have been excused for reasons known to the defendant, such as prior acquaintance." According to MacConnell, he "entered a plea because he was afraid of proceeding further with an unknown jury. Defendant's plea was the result of fear, emotion and panic and, as such, was not voluntarily given but, instead, was the result of the defendant's impaired judgment due to the emotions and fear of the moment."

{¶ 13} In Case No. 2016 CR 0074, MacConnell asserted that he "had a variety of attorneys, all appointed by the Court. If further appears that communications between defendant and his assorted attorneys were confused because the defendant believed that the telecommunications charges would be dropped if he agreed to plead guilty to the theft

offense." MacConnell further repeated his argument that he was not present at voir dire. The State opposed the motions on September 26, 2016.

{¶ 14} On September 28, 2016, the court held a hearing on MacConnell's motions. Therein, MacConnell testified as follows:

MR. LIMOLI: * * * Go ahead Mr. MacConnell. You were talking about the 2015 case.

THE DEFENDANT: Yeah, it was a theft that happened, an alleged theft that happened at UD that Corey Davidson was the one that was there. She had left a book bag there and - -

BY MR. LIMOLI:

Q. So just a theft offense, correct?

A. It was a theft offense. It was, I believe it was under $500.

Q. * * * Could you discuss the 2016 case. Just tell the Court what it's about, to your knowledge.

A. I have been told not to worry about the '16 because it wasn't even set for trial. But it was a telecommunications case, I believe, out of Moraine city.

Q Do you have any knowledge regarding this case? What the allegations are?

A. I have never even seen the discovery with that case yet.

Q. * * * Well, you've been represented by several attorneys in this matter; is that correct?

A. They were court-appointed attorneys at that time. That is

correct.

Q.   * * * Let's discuss the last attorney and I don't want any derogatory remarks if you didn't like the attorney. He's presumed competent; I believe he's competent.   However, that doesn't necessarily mean the two of you are going to get along.   Did you have confidence in your last - - well, first.   Who was your last attorney?

A.   John Jack Leahy.   He has two first names.

Q.   * * * What was your interaction or how did the two of you get along?

A.   I had not interacted well with him.   I had written that on the court docket a few times.   I had turned it in.   And I did not interact well with him and I had asked for him to be - - I had asked to hire my own attorney which now has happened.

And I was told that it would have to go to trial on that Friday but - - or that Monday.   I was told that on that Thursday or Friday, I don't remember the day exactly, but.   And I had talked to you and there was no way that you could've been prepared.   You hadn't even seen anything.

And I was left with Mr. John Jack Leahy who is actually sitting in this courtroom today.   I assume he's been called as the prosecutor's witness now.   But he had met my parents a few times and he had even laughed at me twice.   I had no confidence in him and I had stated that for the record.

Q.   Safe to say that you didn't get along very well on a personal relationship, a personal relationship as far as you and Mr. Leahy; is that a

safe statement?

A. That is a very safe statement, yes.

Q. * * * Do you remember the day of trial?

A. Yeah, I remember the – yeah I remember that Monday, yes.

Q. * * * Tell me what, just tell the Court, from your perspective what happened on that day?

A. That morning I had showed up downtown a little bit earlier. I actually went to Leahy's office and he, I had beat him there. He didn't even know I was coming. * * * He popped up on the same floor - - it was Floor 5, I remember now. And I had asked him and I said are you fired up. He says no. And I had asked him what were we going to do. I asked him do you have the jury's name or the jurors' names. He said nobody went and picked it up yet.

Q. I'm going to slow you down just a little bit. I'm more concerned with what happened when you got to the courthouse. Where were you? What transpired?

A. * * * I left his office, beat him over here because he had to do some things. Came over here. I was sitting in the hallway. I believe Colleen had walked in first and then he had walked in. And I was just sitting out in the hallway.

A bunch of jurors were coming in. I had seen them.

* * *

He had, they, then John or Jack Leahy had arrived and they shut the

door to the bailiff's chambers. I was out there. And he had come out and talked to me over by the bathrooms. And he just said that their offer had remained the same where she would stand mute and it would be up to the PSI. And I said well I want to go ahead. And he, then he went back in. He came back out and he said they have their victims or their witnesses have arrived and he says I don't believe you have any options. He says - - and I said do you have the value expert that the judge approved. And he goes no, we don't have any experts doing the value. And I go well that's what I had asked for. It's on the docket. He had filed the motion and he had never done that. And I was like well this under 1,000 or 500. I don't know what the number was because I think Corey's pawnshop ticket was like 50 or 72 bucks or something. And - -

Q. Mr. MacConnell - -

A. Yes.

Q. - - we're not here to - -

A. Oh, okay.

Q. - - rehash this case. I just want to know what your state of mind was - -

A. I was panicked and worried - -

Q. - - on that particular day.

Q. - - after I had met him over at his office and I had asked him that question, I was just totally distraught.

Actually, that day, I had called my mom and I had told her that I didn't

feel I had any options and I think I was being railroaded. And she says just calm down, think about it.

I was just panicked as, all to death. And he came back out and he says, you know. And I said you really don't have the expert. He goes no, he goes - - and, at that point, I says what are we going, what am I doing. And - -

Q. What was your state of mind that day? Where were you located? Were you in this courtroom?

A. I was out in the hallway, I never walked into - - I walked into this courtroom once and the bailiff had asked me to go back out, Mr. Schmidt. I believe I'm pronouncing his name right. And I went back out there. We had never, I don't believe after that I had ever come in this courtroom.

Q. What led up to you entering the plea in these cases?

A. Jack had said if you got the restitution and if, and if you entered it it would be - - and I says this is what we're doing on this one? He said you don't have any options; I don't have anything else. And I said - - I was just totally distraught. And he went back into the thing. Colleen had left.

* * *

MR. LIMOLI: Please address her as Ms. Egan instead - -

THE DEFENDANT: Ms. Egan. And she had left and I came back. And then Jack Leahy had come and had, he said we're going down to another courtroom on the same side, I think all the way at the end of the hall. We had gone down there. I was sitting in there. And the Honorable

Judge had walked in and he had told me that there was, that his courtroom was preserved [sic] by the jurors and that was up there and they were going to take the plea.

And I had entered the, I entered the plea on the case and 'cause I was basically told that I had no options.

* * *

Q. What was your understanding - - was this a jury trial?

A. Yeah, this was a jury trial.

Q. What was your understanding regarding selection of the jury?

A. I hadn't been allowed in the courtroom after Mr. Schmidt, I hadn't tried to go back in yet either.  But after Mr. Schmidt, the bailiff, had come he had told me that the room, that the jurors were in the room.   * * * But I was told that I was entering the plea to the '15 case, the UD theft case, the alleged UD case as it's referred to and I had done - - and that's what I was told.   * * *

* * *

Q. The question was what was your understanding as far as the jury?  Had it been selected?

A. Yes.

Q. Had it been impaneled?

A. Yeah, there was a room full, there was a room full of jurors. Exactly what I was said or actually I was told.

Q. At that time, did you believe that the jury had been picked?

A. Yes, I did. And I have never seen the questionnaires or the names of the jurors, where they had gone to school or anything, and Jack said, it had not been picked yet.

* * *

Q. Did you believe that Mr. Leahy was going to prove (sic) the assistance you wanted that day or that you, would be expected by you?

* * *

A. No, not at all.

{¶ 15} On cross examination, MacConnell stated that he was diagnosed with a learning disability in college. The following exchange occurred regarding the presence of the jury:

Q. * * * Did I understand you correctly that on the day of trial, in the 2015 case, you believed that a jury had been impaneled, had been picked, in that particular matter?

A. I don't know the exact terminology but I know that a jury was in this room is what I was told.

Q. Well, a prospective jury was in this room, isn't that true?

A. * * * I was not in the courtroom. I have no other knowledge.

Q. * * * What is it about that that made you feel that you didn't have the option to proceed to trial?

A. Because I didn't even know if they were young, old, if they'd gone to UD, if they were cops, if that had been victims. * * *

Q. Who told you the jurors were questioned?

A.   I was told by Jack - -   I was told that the jurors were in the room.

Q. * * *   Who told you that the jurors had been questioned?

A.   When I was told by Mr. Schmidt that the jurors were in the room and he was having printer problems, I figured they were signing their papers and they were doing their oaths. I was never told - -

Q.   So that was your assumption.

A.   I didn't have any, to get to question [sic].   I didn't get to walk in the room to see them. * * * I was told you're not allowed in the room yet is the only thing I had.

{¶ 16}  The following exchange occurred regarding Case No. 2016 CR 0074:

Q.   You also claimed that you had no idea that the 2016 case was being plead at that time, as well; did I understand that correctly?

A.   That is correct.

* * *

Q.   You've no recollection of that indictment being read to you in open court.

A.   No, I was totally distraught and I do not remember that.   I was shocked when it was mentioned by Officer Brandon (sic) over at the Reibold Building. * * *

Q.   Do you remember this judge asking you what your plea was on that case?

A.   I thought, every time this court case is called like this, they always mention the other number.   * * * Both of the cases are usually called

together.

     \* \* \*

Q.   So if I understand you correctly, the first time you realized you had plead in the 2016 case was when you met with the pre-sentence investigation officer?

A.   That is correct.

{¶ 17}   At the conclusion of MacConnell's testimony, the State called John Leahy to testify.   He stated that the plea offer herein from the State was for MacConnell to enter pleas of guilty to theft in 2015 CR 3268 and to one count of telecommunications fraud in 2016 CR 0074, in exchange for the dismissal of the second count of telecommunications fraud, and that he informed MacConnell of the offer multiple times.   Leahy stated that voir dire did not occur herein.   Leahy stated that he never told MacConnell that questions had been asked of the prospective jurors, or that MacConnell had to enter pleas of guilty.   Leahy testified that MacConnell told him that he wanted to plead guilty, and that he did not force MacConnell to enter his pleas.   He stated that he recalled the prosecutor reading the counts in the indictments in both cases, and that Leahy pled guilty in both cases and signed the plea forms.   When asked if MacConnell had any questions during the process, Leahy stated that MacConnell had a question regarding restitution because "on the '16 case there were two charges [and] you were dismissing one of those charges. But we agreed that the restitution would still be paid on the case that was being dismissed and that was specifically discussed between myself and Mr. MacConnell."   Leahy stated that MacConnell responded in a manner that led him to believe that he understood what transpired.   When asked about MacConnell's demeanor in the courtroom, Leahy

responded that "he tends to get a little fidgety so that's the adjective I would use, fidgety." When asked if MacConnell appeared to be panicked, Leahy responded that "[o]nce he came to the conclusion that he was going to plead guilty, he seemed relieved." Leahy stated that he went over the plea forms with MacConnell.

{¶ 18} The following exchange occurred on cross examination:

Q. * * * You represented Mr. MacConnell in this case. * * *

A.   On both cases.

* * *

Q. * * * And today you're here on behalf of the State?   The prosecutor?   You're the State's witness, you're not my witness.

MS. EGAN:   Objection, Your Honor.   He was never subpoenaed.

THE COURT:   * * * I think the characterization he's the State's witness may go a little too far but he was called in the State's case, so.   If that's what you're talking about, I will allow it.

* * *

BY MR. LIMOLI:

Q.   How did you get along with Mr. MacConnell?

A.   Fine.

Q.   You heard Mr. MacConnell testify that it wasn't the best of relationships?   You've had other clients.

A.   I can't say it was any different than any other relationship I've had.

{¶ 19} On September 28, 2016, the court in Case No. 2015 CR 3268 issued an

"Entry and Order Overruling Defendant's Motion to Withdraw Plea." The court noted that although the withdrawal of the plea would result in some hardship for the State to secure witnesses to testify in additional proceedings, "the prejudice does not rise to a level that would require the denial of Defendant's *Motion to Withdraw."* The court concluded that MacConnell's assertion that Leahy informed him that the jury had been selected and accordingly advised him to enter his pleas "lacks merit." The court noted "that voir dire never took place in this matter, so it would not have been possible for Defendant to have missed any part of the jury selection process. Although the jury pool had entered the courtroom at the time Defendant entered his plea, no potential juror had been questioned by either party, and no jurors had been selected to hear this case." The court further noted that "Mr. Leahy appeared extremely competent to represent Defendant in this matter, and informed the Court that he was prepared to proceed with the trial, if necessary." The court found MacConnell's "assertion that he lacked adequate representation to be unpersuasive. The Court specifically inquired as to whether Defendant was satisfied with Mr. Leahy's representation, and Defendant affirmatively replied."

**{¶ 20}** The court further indicated that it "has conducted an extensive review of Defendant's plea hearing on August 22, 2016," and it concluded that MacConnell "understood the nature of the charges and penalties that he was facing, prior to entering his plea, as well as the entirety of the State's plea offer." The court noted that throughout the plea hearing, it "verified numerous times that Defendant understood what was explained to him. Specifically, after explaining each charge and the possible prison terms, the Court inquired as to Defendant's understanding of each count. The Defendant

answered affirmatively to all questions regarding his understanding of the charges, and never indicated otherwise." The court noted that it "verified that Defendant was entering his guilty pleas voluntarily." According to the court, MacConnell understood that "by entering his guilty pleas, the Court would enter judgment against him and continue to sentencing," and that MacConnell "was afforded a full and extensive hearing in accordance with Crim.R. 11."

{¶ 21} The court further found that MacConnell was afforded a full hearing on his motion to withdraw his pleas, noting that he "was afforded the opportunity to explain the reasoning" for his motion. The court further noted that MacConnell was able to cross-examine Leahy. The court found that the timing of MacConnell's motion to withdraw his pleas was reasonable. Regarding the reasons for the motion to withdraw, the court noted that "voir dire never took place in this matter, and it would have been impossible for Defendant to have been prevented from participating in a process that did not occur." The court noted that MacConnell testified "that no one ever told him that the jurors had been questioned, or selected, outside of his presence. Rather Defendant admitted that he assumed that jurors had been selected simply because the prospective jury pool had been allowed to enter the courtroom."

{¶ 22} According to the court, "because Defendant did not miss the voir dire proceedings, he cannot now credibly assert that he only entered his pleas because he was afraid to go forward in front of an unknown jury. Moreover, the Court finds that Defendant never raised any concerns or asked any questions about voir dire during his plea hearing." The court found that although MacConnell testified that he was distraught at the plea hearing, "he never appeared to be distressed and did not seem to have any

hesitation or confusion about entering the plea agreement." The court further found that MacConnell "never gave any indication that the details of the plea agreement were unclear, or that he was agreeing to enter guilty pleas out of fear. In fact, when the Court asked Defendant if he had been coerced in any way, Defendant answered very clearly that he had not."

{¶ 23} According to the court, "contrary to Defendant's assertion that he was unaware that his plea agreement included the charges in Case No. 2016 CR 0074, the State and the Court very clearly explained that the plea agreement included both cases against Defendant. Moreover, Defendant admitted that both cases against him were usually called together during the Court's docket." The court noted that it "confirmed Defendant's desire to give up his rights and enter his guilty pleas, and Defendant informed the Court that he did not have any questions about any part of the proceedings."

{¶ 24} Finally, the court noted that MacConnell "pleaded guilty to the charges in this case and, when specifically asked by the Court if the allegations against him were true, Defendant answered in the affirmative. Further, Defendant failed to present any evidence or testimony that would demonstrate a complete defense to the charges to which he pleaded guilty."

{¶ 25} On October 12, 2016, MacConnell filed a "Motion for Stay of Execution Pending Appeal," in Case No. 2015 CR 3268, and on the same day he filed his Notices of Appeal. On November 28, 2016, he filed a "Motion for Judicial Release" in Case No. 2016 CR 0074.

{¶ 26} On October 14, 2016, MacConnell filed a "Motion for Clarification" in Case No. 2016 CR 0074. The motion provides as follows:

Defendant timely filed a Notice of Appeal in both cases. Upon inspection, the Second District Court of Appeals noted that the docket in Case No. 2015CR03268 evidenced that the motion to withdraw the guilty plea was overruled by this Court. The Second District also noted that the docket in Case No. 2016CR00074 did not indicate that the motion to withdraw the defendant's guilty plea had been overruled. * * * Thus it is unclear whether the defendant's motion to withdraw his guilty plea in Case No. 2016CR00074 was overruled or remains pending. * * *

Defendant filed a motion for a limited remand to assure that this Court has jurisdiction to address this issue. The Second District granted the motion on December 7, 2016. * * *

Defendant respectfully asks that this Court clarify its ruling on his motion to withdraw his guilty plea in Case No. 2016CR00074 and that this Court's decision be entered upon the docket in this matter.

{¶ 27} On December 20, 2016, the trial court issued an "Amended Decision Overruling Defendant's Motion to Withdraw Plea," in Case No. 2016 CR 0074, in which it indicated that it "only included Case No. 2015 CR 3268 in the caption of the entry and order due to a clerical error." The court indicated that its decision overruling MacConnell's motion "clearly applied to both Case No. 2015 CR 03268 and Case No. 2016 CR 00074. Both Case No. 2015 CR 03268 and Case No. 2016 CR 00074 were called by Kim Melnick[1], counsel for the State of Ohio, in the case identification before oral arguments * * *, evidence was clearly received in both case numbers," and the

_____

[1] As noted above, Attorney Colleen Egan represented the State herein.

subsequent ruling applied to both case numbers. The court incorporated its Entry overruling MacConnell's motion to withdraw "in its entirely as if reprinted herein, for Case No. 2016 CR 00074." On December 27, 2016, MacConnell filed an "Amended Notive of Appeal" for the 2016 matter.

{¶ 28} MacConnell asserts two assignments of error herein. His first assigned error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION TO THE DETRIMENT OF THE DEFENDANT-APPELLANT WHEN IT, IN PRINCIPLE, DENIED HIS RIGHT TO RETAIN ALTERNATE COUNSEL.

{¶ 29} According to MacConnell, the "trial court's suggestion that MacConnell was free to retain private counsel is illusory. While, in theory, it was possible for MacConnell to retain private counsel, in reality it was not. Few, if any attorneys would be willing to accept a case that required that they proceed to trial three days later or, in practice, the next business morning." MacConnell asserts that the "trial court abused its discretion by refusing to provide sufficient time for private counsel to prepare for trial in a manner consistent with the quality of legal representation expected of attorneys in the State of Ohio."

{¶ 30} As noted above, MacConnell filed, on August 12, 2016 and August 18, 2016, motions asking the court to *appoint* new counsel to replace Leahy. There is nothing in the record suggesting that MacConnell requested a continuance in order to retain counsel, and the court concluded that Leahy was competent and prepared for trial. Furthermore, MacConnell did not bring up the issue of retaining counsel until 10 days before the scheduled trial date on indictments which had been pending for five to six

months. Most significantly, "[i]n general, a guilty plea waives all claims of error preceding the plea except claims of ineffective assistance of counsel sufficient to cause the defendant's guilty plea to be less than knowing and voluntary. *State v. Kidd*, 2d Dist. Clark No. 03CA43, 2004-Ohio-6784, ¶ 16." *State v. Guerry*, 2d Dist. Clark No. 2015-CA-30, 2016-Ohio-962, ¶ 6. Any argument that the trial court denied MacConnell his "right to retain alternate counsel" is not only not supported by the record, but it is waived, and MacConnell's first assignment of error is overruled.

**{¶ 31}** MacConnell's second assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION TO THE DETRIMENT OF THE DEFENDANT-APPELLANT WHEN IT REFUSED TO GRANT THE MOTION TO WITHDRAW THE GUILTY PLEAS WHERE IT WAS PATENTLY APPARENT THAT THE DEFENDANT'S ALLEGATION REGARDING HIS INABILITY TO EFFECTIVELY COMMUNICATE WITH TRIAL COUNSEL WAS TRUE.

**{¶ 32}** MacConnell asserts that the trial court erred in refusing to grant his motion to withdraw his pleas after he "indicated that attorney client communications were irretrievably broken" and that Leahy "verified the movant's contention either through explicit admission or through action from which one could rationally imply a breakdown of the attorney client relationship." According to MacConnell, the "trial court had notice that MacConnell and his court appointed attorney were unable to work together." MacConnell asserts that Leahy's willingness to testify "without being subpoenaed raised the specter of possible collusion," and "Leahy's willingness to testify in favor of the prosecution clarified and strengthened MacConnell's previous assertions that the

attorney client relationship was irretrievably broken."

{¶ 33} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." As this Court has previously noted:

> * * * Under the foregoing rule, a pre-sentence motion to vacate a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Nevertheless, even under the pre-sentence standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion. *Id.* The pre-sentence standard, however, is far more lenient than the "manifest injustice" standard applicable to post-sentence motions. *State v. Fugate,* 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10.
>
> * * *
>
> But even under the more lenient pre-sentence standard, "a defendant must show a reasonable and legitimate basis for the withdrawal of the plea." * * * "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. * * * Likewise, a trial court's ultimate decision to grant or deny a pre-sentence motion to withdraw a guilty plea is subject to review for an abuse of discretion. *Fugate*, at ¶ 10.

*State v. DeJesus*, 2d Dist. Greene No. 2015-CA-4, 2015-Ohio-4111, ¶ 16, quoting *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 7, 10.

**{¶ 34}** As this Court has noted:

An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

*State v. Rush*, 2d Dist. Greene No. 2015-CA-54, 2016-Ohio-4895, ¶ 8.

**{¶ 35}** As this Court has further noted:

A trial court does not abuse its discretion denying a motion to withdraw a plea when: " '(1) the accused is represented by competent counsel; (2) the accused was afforded a full Crim.R. 11 hearing before he entered his plea; (3) the accused is given a complete, impartial hearing on the motion to withdraw; and (4) the court gave full and fair consideration to the request to withdraw.' " [*State v.*] *Berry*, 2d Dist. Greene No. 2013-CA-34, 2014-Ohio-132 at ¶ 33, quoting *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 18. (Other citation omitted.)

Furthermore, the following additional factors may also influence the court's analysis: " '(5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible

penalties, and (8) whether the accused was perhaps not guilty or had a complete defense to the charge or charges.' " *Berry* at ¶ 36, quoting *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist. 1995). This list is not exhaustive. *Id.*

*State v. Spurgeon,* 2d Dist. Greene No. 2014-CA-12, 2014-Ohio-4849, ¶ 15-16.

**{¶ 36}** Based upon the record before us, we cannot conclude that the trial court abused its discretion in denying MacConnell's motion to withdraw his plea. We initially note that "in Ohio, a properly licensed attorney is presumed competent. * * *." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We have no basis to conclude that MacConnell was not represented by competent counsel. While MacConnell indicated that he asked Leahy to file "other motions," he does not identify them, and Leahy filed "Defendant's Motion for Valuation Expert" on August 12, 2016, and a "Motion for Disclosure of Brady Material" on August 19, 2016 in the theft case. The court noted in its August 19, 2016 Decision overruling MacConnell's motion to replace Leahy, that on August 17, 2016, Leahy indicated to the court that he was prepared for trial and able to represent MacConnell. The court further noted that Leahy did not indicate that the attorney-client relationship was broken. Leahy testified at the hearing on the motion to withdraw that he and MacConnell got along, and MacConnell indicated at the plea hearing that he had the opportunity to discuss the elements of his offenses, any defenses he may have had, and any motions he could file with Leahy. MacConnell specifically indicated that he was satisfied with Leahy's representation. Leahy's testimony is completely consistent with the transcript of the plea hearing as to the contents of the plea agreement, and that he communicated the offer to MacConnell, that he did not

force him to plead guilty, that the charges were read to MacConnell from the indictments in both cases, and that MacConnell pled guilty and signed the plea forms that Leahy went over with him. Leahy's assertion that voir dire did not occur is consistent with the trial court's finding, and we see no basis to conclude that Leahy's testimony in the absence of a subpoena "raises the specter of possible collusion."

{¶ 37} We further find that MacConnell received a full Crim.R. 11 hearing prior to entering his pleas. Crim. R. 11 provides in relevant part:

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the

defendant cannot be compelled to testify against himself or herself.

{¶ 38} The transcript of the plea hearing reflects that MacConnell indicated in response to the court's questions that his pleas were voluntary, that he understood the nature of the charges and penalties, and that he was eligible for community control sanctions. The court further informed MacConnell that a guilty plea is a complete admission of guilt, and that upon acceptance the court would proceed to judgment and schedule sentencing. Finally, the record reflects that the court advised MacConnell of each of his constitutional rights as set forth in Crim.R.11.

{¶ 39} The record further reflects that the court provided a complete and impartial hearing on the motion to withdraw and gave the full and fair consideration to the request to withdraw. MacConnell testified on his own behalf, and he was able to explain the basis for his request to withdraw his plea, namely that he was not present at voir dire, which caused him to be fearful, and that he believed that both telecommunications fraud charges would be dropped in exchange for his plea to the theft offense, both of which assertions are belied by the record. Finally, MacConnell was able to cross examine Leahy.

{¶ 40} We agree with the court that MacConnell's motion was made within a reasonable time, and that it set out specific (but unfounded) reasons for the withdrawal. MacConnell indicated that he understood the nature of the charges and possible penalties by signing the plea forms. Finally, we conclude that the trial court had no basis to find that MacConnell was perhaps in fact not guilty or had a complete defense to the charges. Since an abuse of discretion is not demonstrated, MacConnell's second assignment of error is overruled. The judgment of the trial court is accordingly affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., concurring:

{¶ 41} I concur and write separately only to comment on the suggestion in Appellant's reply brief that Appellant's trial attorney was "clearly . . . ignoring the requirements of R.C. 2317.02, . . ." by testifying at the hearing on the motion to withdraw the pleas.

{¶ 42} In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship. *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 24.

{¶ 43} However, R.C. 2317.02(A)(1) provides that a client waives any testimonial privilege by voluntarily revealing the substance of attorney-client communications. "Clearly," Appellant's testimony at the hearing revealed the substance of conversations between him and his trial attorney. At no time in his testimony at the hearing on the motion to withdraw the plea did the trial attorney discuss anything about what the defendant may have told him about the facts of the case or his guilt or innocence; rather all the questions and answers dealt with conversations about the decision to plead guilty – the exact subject and conversations about which Appellant testified at the hearing.

{¶ 44} Furthermore, the attorney would be permitted to testify under the principles behind the so-called self-protection exception. *See, e.g.,* the discussion in *State v. Montgomery*, 2013-Ohio-4193, 997 N.E.2d 579 (8th Dist.), of R.C. 2317.02(A),

Prof.Cond.R. 1.6, Formal Opinions of the ABA, and Ethics Opinions from other states; *compare State v. Howard*, 2d Dist. Montgomery No. 8001, 1984 WL 5414 (Jan. 5, 1984).

**{¶ 45}** Moreover, after filing a motion arguing that "communications between the defendant and his assorted attorneys were confused" and stating what "the defendant's attorney simply told" him, and testifying extensively at the hearing about conversations between him and his trial attorney, Appellant never objected to his trial attorney's being called as a witness or to any of the trial attorney's testimony.

**{¶ 46}** Even if there had been an objection, it would not be sustained. In *State v. Houck*, 2d Dist. Miami No. 09-CA-08, 2010-Ohio-743, the Appellant filed a motion to withdraw her plea and objected when the State called her trial attorney to testify.

Here, [Appellant] unequivocally waived the confidential, privileged nature of her communication with [her trial attorney] concerning whether she should plead guilty to the charged offense, when she testified concerning the communication, including what [her trial attorney] had advised her. She may not publish to the world her attorney's advice to her and expect that it will thereafter remain privileged.

A ruling to the contrary would permit anyone, in either criminal or civil litigation, to claim with impunity that she was acting on advice of counsel, without permitting her former counsel to be asked, by adverse parties, whether that was, in fact, counsel's advice. The attorney-client privilege is a shield, to protect the confidentiality of a client's consultation with her attorney, not a sword to facilitate perjury concerning the substance of counsel's advice."

*Id.* at ¶s 37, 38.

**{¶ 47}** Any hint in the Appellant's briefs that the trial attorney violated his legal and/or ethical duties by testifying at Appellant's motion to withdraw his plea is totally unfounded on this record.

. . . . . . . . .

Copies mailed to:

Andrew T. French
John K. Limoli
Hon. Dennis J. Adkins